Good morning, Your Honors. My name is Christopher Kopacz from the State Appellate Defender's Office and I represent the defendant, Kendrick Butler. Good morning, Counsel. I'm Assistant State's Attorney Tasha Marie Kelly on behalf of the people. Good morning, Counsel. Your last name again? Kelly, K-E-L-L-Y. Thank you. May it please the Court, again, I represent the defendant, Kendrick Butler, and I would like to reserve a couple minutes for rebuttal. This appeal involves a series of legal errors that infected the entirety of Kendrick Butler's jury trial. Four errors dealing with the admission of the out-of-court statements of the State's witnesses and the remaining three errors dealing with the admission of wholly irrelevant evidence and improper arguments by the prosecutors. The State's only evidence against Kendrick Butler were the recanted out-of-court statements of three convicted felons, Sean Jenkins, Tremaine Brown, and Eric Robertson. First with respect to Sean Jenkins, his oral and handwritten statements were wholly inadmissible at trial, first because he lacked personal knowledge of the events in his statement, which is a requirement for admission under Section 115-10.1. Is there any exception that's applicable to whether or not those statements are admissible? Exception to the personal knowledge requirement? No, there is none. As far as you're concerned, those statements are never admissible under any circumstances? Well, in order to be admissible, they have to satisfy the requirements of 115-10.1. And where they don't satisfy those requirements, they're inadmissible. This is a statute that was created in derogation of the common law rule against hearsay statements, and so it's important No, again, my question is a lot more narrow than that. Sure. You're making a very sweeping statement that these statements were never admissible under any circumstances, therefore this is reversible error. I mean, that's the nutshell of the argument, and I'm asking you whether there are any circumstances that you know of, any case law, anything that you can think of under which these statements may be admissible. You're saying it's an absolute, that they're never admissible under any circumstances? Correct, because they do not satisfy the personal knowledge requirement, and that is sort of a basic fundamental requirement of 115-10.1. And here were the statements that Sean Jenkins provided were entirely the statements of Kendrick Butler. They were things that he heard, things that he had never observed firsthand. Those are not the type of Were those statements being offered to show the substance of what it was that the statements were supposedly stating? What were the statements being offered for? Maybe I should ask. Oh, absolutely. They were offered to show that Kendrick Butler committed the shooting, and that's the substance of what the matter asserted was that Kendrick Butler committed the shooting. So they were absolutely admitted for their substance. And even if they were only admissible for impeachment purposes, as we argued in our case, those statements could not come in as impeachment evidence. So either, whether the state's offering them for substantive purposes or impeachment purposes, those two statements simply are not admissible. And the state argues, to answer your question also, the state argues that these statements might be an admission, but that would simply gut the entire rule, because the rule requires personal knowledge, and it can't rely on just incriminating statements. There's plenty of case law that says we can't rely on, you know, someone who just overhears the defendant making incriminating statements. That does not satisfy the personal knowledge requirement. Well, the defendant didn't object to trial as to these statements, did he? So you're going on plain error? Correct. Or both prongs. And also for ineffective assistance of trial counsel for not objecting. To this and a number of other errors, all of which, individually or cumulatively, deprived him of a fair trial. Okay, so there's no question, there was no objection to trial. It was not the subject matter of a post-trial motion, correct? Correct. Proceed. And that leads me into the next argument about the admission of multiple prior statements coming in under Section 115-10.1. That statute, by its plain language, only relaxes the hearsay rule. It says, statements shall not be made admissible, inadmissible by the hearsay rule. And when the state introduces multiple statements saying virtually the same thing from the same witness, those act as prior consistent statements and should be inadmissible. In this case, we have Sean Jenkins, who provided an oral statement and a handwritten statement and a grand jury statement. So during Sean Jenkins' testimony, the state went through all of those statements and then proceeded to introduce evidence of the oral statement, the handwritten statement, and the grand jury statement. Again, with Tremaine Brown, we have videotaped statement, a handwritten statement, and a grand jury statement. The state did the same thing, went through each of those statements during Tremaine Brown's testimony and then introduced those statements again. And finally, for Eric Robertson, we have an oral statement and grand jury testimony, all of which, again, were admitted both during Eric Robertson's testimony and then the state went through them again with the law enforcement officials. And when the state introduces multiple statements under 115-10.1, it acts exactly like a prior consistent statement. And case law is clear that those are not allowed because they have an improper bolstering effect. It enhances the credibility of those prior statements. And 115-10.1 only relaxes the hearsay rule. Mr. Kopacz, have you announced your last name? Kopacz. Kopacz. You say that you are proceeding under plain error. Just give me a synopsis of why you think the evidence was closely balanced in this case. Sure. The evidence was closely balanced because the only evidence tying Kendrick Butler to the shooting were the three witnesses, all of whom recanted at trial. And those witnesses were all convicted felons, two of which were under investigation themselves and so certainly had a motive to assist the police. And again, all those statements were recanted at trial. And they were of questionable credibility. And there's no physical evidence tying Kendrick Butler to this crime. So all we have, again, are these out-of-court statements and that's it. And so that is not, it's a credibility contest. And those are the sorts of cases where the Supreme Court has made clear the evidence is closely balanced where it comes down to a matter of credibility. And here it was an issue of whether or not these out-of-court statements, many of which contained inadmissible hearsay, many of which were improperly admitted, were credible enough to sustain the conviction. And here they simply weren't. And so the, again, the 115-10.1 statute by its plain language only relaxes the hearsay rule and makes it impermissible. It simply does not conceive that the state would be able to exploit that statute by admitting multiple statements from the same witness over and over again to undermine their credibility. So if you, let's say you have a defendant and somehow this defendant gets every prior statement to get, be recanted, then he can never be tried. That's certainly not true. You're saying he can't be tried. No, the state certainly. And all the defendant need do is just get a hold of all of these witnesses, get them to recant, and then the state is left empty-handed and there's no trial. That's certainly not true. The 115-10.1 allows them to introduce one statement. They can introduce the witness's grand jury testimony or the witness's handwritten statement. What we're saying is that they can't introduce every single one of those prior statements. Because when you introduce every single one at trial, it has an improper bolstering effect. It enhances their credibility. The state, in fact, is even better off. On the other hand, doesn't it create a situation where you're giving it to the jury to decide? Let the jury decide, which is the evidence based upon whatever they said in the past? And that's what 115-10.1 contemplates, is that you put that statement in front of the jury. What it does not contemplate is that the state exploit it by introducing every single statement ever made to law enforcement, and therefore, bolstering the credibility of those statements. That's exactly the reason that we have the rule against prior consistent statements, is that there's an improper bolstering effect. And the jury picks up on that and gives them credibility beyond what they should have. So are you saying all these statements were consistent or inconsistent, the ones that were admitted? They were all consistent. The out-of-court statements were consistent with each other. Right. And the case you cite, does it involve consistent statements or inconsistent? Which case are you talking about? Johnson? Yeah. So Johnson, what Johnson said is that you're talking about, we argue first that Johnson was wrongly decided, because the way they look at it is that you're looking at inconsistent statements and you measure it all against the trial testimony. Our argument is that when all of those statements come in as substantive evidence, there's no reason to treat them any different from the trial testimony, which also comes in as substantive evidence. And so those prior inconsistent statements are all consistent with one another. And the prior consistent statement, the bar on prior consistent statements should exclude those additional statements. Okay. But again, your argument is that all the prior statements were consistent every? Yes. Okay. Yes. Okay. Yep. We also argued in the brief that the state introduced blatantly inadmissible testimony from the prosecutor's law clerk that Termaine Brown said in a conversation out in the hallway that he would come in and be a man and testify, and that each of his prior statements constituted the truth. And the prosecutor used a series of leading questions to her law clerk, allowing her to testify to this conversation. And it allowed the prosecutor herself to vouch for the credibility of those out-of-court statements. How does that allow the prosecutor to vouch for those others? I'm not following that in your brief. The prosecutor didn't testify, did she? Effectively, she did when she asked leading questions. Didn't Termaine Brown say he would come in and be a man? Yes. Well, let me ask you this. How is that different from any other garden variety impeachment? Tell me how it's different. In part because it violates the witness advocate rule that prevents the prosecutor from making his own version of the facts, his own credibility determinations into the proceedings. But the prosecutor didn't testify. She effectively did when she called the law clerk for the sole purpose of allowing the prosecutor herself to say, isn't this what I said during the conversation? The law clerk was present at the conversation, was she not? Yes. So if the witness goes into court and changes his testimony, the law clerk was present and the prosecutor calls the law clerk, how is that different? Back to my original question, how is that different from any other impeachment, garden variety impeachment that a prosecutor would engage in? Tell me how it's different. Simply because the prosecutor was there? Is that what you're saying? Not simply because the prosecutor was there. In part because it violates the witness advocate rule. Also in part because it's an entirely collateral matter. It's not really relevant whether Tremaine said that he would be a man and come in and testify and whether or not those other statements were the truth. The state was already introducing those statements as substantive evidence. Getting him or getting in testimony that she talked to him and that he would be a man and that those statements were the truth simply added nothing to the case here. The only purpose for those statements was to elicit hearsay that those statements were true. So was that objected to, that testimony at the time? It was objected to during Tremaine's testimony, when the subject was brought up then. When the law clerk testified, was the testimony of the law clerk objected to? That was Justice Connix's question. Correct. Not at that time. Defense counsel, and again, we would argue that he was ineffective for allowing this. And your argument relative to leading questions, are they objected to the questions that were asked as being leading? No. Again, defense counsel did not object. Only pointing out the fact that he was ineffective for allowing this and all the other improper evidence to come in. And finally, I'd like to point out to the court, again, that impermissible hearsay that came out during Tremaine Brown's testimony that he heard out on the street that Kendrick had been jumped by someone named Little Bud, and he guesses that Kendrick was going to retaliate. That is garden variety rank hearsay by an unknown declarant, and wholly improper and prejudicial because it imparts a motive from someone we have no idea who he is, someone Tremaine heard out on the street. And the state doesn't even dispute this in its brief, effectively conceding that it is impermissible double hearsay. So what's the effect of that error, then? The effect of that error? It prejudices Kendrick because it allows in evidence of a motive that he can't sort of a vague, ambiguous motive that he can't cross-examine about that's not very specific. And do we know the weight that that evidence may or may not have been given? We don't know the particular weight. But again, when all we have are these out-of-court statements that are implicating Kendrick, we can assume that they must have been given a lot of weight. And if the court has no other questions, I guess I'd like to reserve a couple minutes for rebuttal. Fine. Thank you. Again, may it please the court, I'm Assistant State's Attorney Tasha Marie Kelly. Just to put this case into some perspective, as counsel represented to this court and as this court noted, almost every claim that is raised here by the defendant in his brief was not objected to at trial. So the realm under which this court can examine these issues is either under the vein of plain error or under the rubric of ineffective assistance of the defense counsel. And while our position is that this is a case where the defense counsel has raised a large number of issues and statements and evidence which the defense counsel didn't object to, are you saying that none of that mattered? Well, I'm saying that first of all, the errors, the alleged errors that the defendant has raised are in fact not errors. And we can address those substantively. But I'm also saying that our Supreme Court has been very clear that in cases like this, if they can be disposed of on the prejudice prong, that they should be. And that in this case, this court can in fact do that. Because if you look at what we have here, at the end of the day, even if you take out every piece of evidence that the defendant is objecting to, what this court has done is it has submitted prior inconsistent statements which identify the defendant as the shooter, which contain a confession by the defendant and eyewitness identifications. And that's more than enough to sustain a conviction in this case. But turning to defendant's substantive issues individually, first of all, the defendant talks about the admission of the oral and handwritten statements by  And I think that Jenkins, his non-grand jury statements, not regarding his conversations with the defendant, where he claims that the defendant admitted that he committed the crime. Are those hearsay within hearsay and not admissible even under 115-10? They are admissible under 115-10. But moreover, they're sort of taken out of the box of the hearsay, because more importantly, they're admissible as admissions by a party opponent. And the law is clear that How so? Explain that. Because they are statements by the defendant, who is a party in this case, and he is admitting basically his guilt for the offense, they are admissible. And in People v. Aguilar What about non-hearsay? Well, in People v. Aguilar, the court stated that the hearsay rule is not a basis for objection when the testimony is an admission by a party opponent. It takes it out of the realm of the hearsay rule. And in other cases that are cited in our brief, the courts have stated that each and every statement is admissible, that it's not barred by the hearsay rule because it is an admission by a party opponent. And that's what we have in this case. So you're saying that that's not double hearsay. They're just wrong. I'm saying that double hearsay is not an issue because the hearsay rule does not exclude admissions by party opponents. But even if we look at this under the realm of the hearsay rule, and we look at it under 115.10.1, the statements are still admissible because Mr. Jenkins had personal knowledge in this case. In order to establish that an individual has personal knowledge What personal knowledge did Jenkins have? Well, we have to show that he actually perceived the events. And in this case, there's Perceived what events? He wasn't there when the Well, there's testimony in the record that he was a block away from the shooting and that he actually heard the shooting. A block away is not the same thing as being there and perceiving the events. So how would he get personal knowledge from a block away other than what somebody told him? Well, perceiving has been defined in the cases as experiencing it with your own senses. So in this case So you're saying that from a block away he experienced the murder and he knew enough about it to be able to talk about it from his own experience. Is that your argument? He heard the shooting. He was aware that the shooting took place. And he was in enough fear of the shooting that he stated to the detective that he left the area because he was afraid. Counsel, let's be clear. Mr. Jenkins did not see the shooting. Can we agree on that? Absolutely. He did not see the shooting. He was not an eyewitness. But our position is that through hearing it, he did perceive the shooting. He heard a shooting from a block away. And that makes him have personal knowledge that this defendant is the shooter. Is that what you're saying? No. We're saying that he had personal knowledge that the shooting occurred. What the case law states is that. Counsel, the problem that your opponent has is I think everybody agrees the shooting occurred because somebody is dead. So we know that the shooting occurred. The question is, who did the shooting? And that's the issue. And your witness, Mr. Jenkins, didn't see the shooting. He heard shooting from a block away and left the area because he was concerned about the shooting. But I think my question to you is how does that give him personal knowledge that this defendant is the shooter? Well, I don't believe that that is what the case law requires. But that's the question I'm asking you. I'm sorry. I believe that what the case law requires is that you actually perceive the event that is the subject of the statement. And in this case, the event is the shooting. And the requirement is not that you are an eyewitness and that you have the knowledge that the defendant is the shooter. What does it mean to perceive the event? To experience it with your own senses.   he heard shooting, that it took place, and that he was in fear enough that he left the area? So because of that, our position is that the two statements in which Jenkins recounts the conversations that he had with the defendant are admissible under 115.10.1. Personal knowledge because he was a block away when he heard shooting, so that gave him personal knowledge. Correct. That's your position. Yes. And that they are also admissible as statements by a party opponent. In terms of the third statement, it's a little bit different. The third statement is a conversation that Jenkins overhears between defendant and an individual named Ken on the telephone in which the defendant asks this individual to get rid of the gun. Clearly this statement does not describe the shooting, the event, and as such, it is admissible because what the case law says is that if the statement consists of what a witness heard and what the witness heard does not narrate or describe an event, then it can also satisfy the personal knowledge requirement. So in this case, because the last statement here is describing a future event and not the past event, that being the shooting, that statement is also admissible under 115.10.1. Moving on to the second issue raised by defendant, which is the admission of the prior inconsistent statements, there are two appellate court cases decided by this court which are very clear. That's People v. Johnson and People v. Harvey, which state that we measure consistency against trial testimony. In this case, the statements that were admitted were clearly prior inconsistent statements because they were inconsistent with his trial testimony. And because they were prior inconsistent statements, the multiple statements were all admissible because there is no limitation set forth for the admission of these prior inconsistent statements. And there is no bolstering in this case. We have to take it into perspective and think about what happened here. The state's witnesses came into court before the jury. They took an oath to tell the truth. They sat on that stand, and they not only denied identifying the defendant as the shooter, they stated that they fabricated their prior grand jury testimony, that the assistant state's attorneys in this case made up the handwritten statements and told them to sign. They denied speaking to the detectives. And the impact that that had on the jury can't be minimized in this case. We're practitioners of the law. We've seen cases like this before. We know that in these gang cases, the witnesses flip. They come in. They deny their prior statements. They deny seeing anything. And these statements come in under 11510.1. That's typically how this occurs. But these jurors, this could be the first time that they have been acquainted with cases like this. They may not be aware that this is commonplace. And so to them, a witness coming in and testifying, I didn't say that before. That's not my statement. No, I made that up. That is damaging testimony. And the only way that that can be cured is by showing that on prior occasions that this witness made statements identifying this defendant, and that on every other occasion that he's had to speak to the police, to speak to detectives, to assistant state's attorneys, he's been consistent. Do you think there can be a point where if enough of those statements are allowed in, that it can overpersuade or be prejudicial or raise bias as your opponent claims? That might be a possibility in another case. In this case, no, where multiple witnesses came in, and they all claimed that. But that's my point. If there's so many of them, at what point is it too many? It's not too many in this case. What's the magic number? I'm not quite sure, and I guess that would be a decision for the legislature who chose not to write a limitation into the statute for the admissibility of these types of statements. How many statements were there of Mr. Jenkins? Of Mr. Jenkins, there were three statements submitted from Mr. Jenkins. And were they identical statements, or did they discuss different aspects of the situation? Mr. Jenkins' testimony primarily centered, because he was not an eyewitness, primarily centered around the conversations that he had with the defendant. My question was, were they all the same statement, the ones that came in, or did they have different nuances or different things that were said? Substantially they were the same. So your argument would be that those three similar statements are not bolstering? Well, especially when you look at the type of statements that they are, it kind of explains why it's important that they all come in. You have grand jury testimony, which shows that at a prior time, this witness went into a courtroom under oath, swore to tell the truth, and identified and made these statements. You have a handwritten statement, which shows that he sat down with someone, had a conversation, had a chance to review that statement, and said, this is the truth, I'm signing this. You have an oral statement, which was taken, you know, that's taken the first time you have a chance to speak to detectives, which shows the first time that this individual had a chance to speak to the police officers, this is what he told them. So while substantively they are the same, it shows that he made these statements under different circumstances. Sometimes police were present, sometimes they were not. Sometimes an assistant state's attorney was present. And it shows that he was consistent in these prior statements. Moving on to the third issue, which has to do with the testimony from the law clerk in this case. As you noted, Justice Cunningham, this is similar to any other impeachment of a witness that we would see. And there is a specific procedure that's set forth for the questioning of witnesses for the purposes of impeachment. And that's what was followed in this case. You specifically ask the witness the question, in question form, the statement that was made by the witness in this case. And that's exactly what the prosecutor did here. The prosecutor was not testifying. The prosecutor did not offer her own opinions of the witness or try to offer testimony in this case. This case is measurably different from the case that's cited by defendant, which is People v. Blue, which talks about the witness advocate rule. In that case, the prosecutors were actually injecting their own opinions in factual statements, inappropriately, into their actual questions and objections. And that's not what occurred here. We've laid out the law clerk's testimony in this case. And it's clear that the prosecutor in this case is merely asking the law clerk, did Mr. Brown say this? Did Mr. Brown say this? And the law clerk is responding appropriately. Let me ask you another question on something you didn't touch on. In your brief, you make a very strong argument throughout the brief for forfeiture on almost all of the issues raised by the defendant. Doesn't that support the defendant's claim of ineffective assistance of counsel? It would if the defendant could in some way demonstrate prejudice, which he cannot do in this case. That's his point. He says that without all of this, all of these errors, the outcome would have been different. I mean, that's always the argument. But that's what he says. And why isn't that a viable argument? I mean, you go to great lengths to basically point out that none of this was objected to at trial and most of it was not objected to in a post-trial motion. Well, if you look at these, at the claims individually in terms of determining whether there was prejudice, for example, Jenkins' oral and handwritten statements, he says those were improperly admitted. That was a waived claim. Well, that exact same testimony, as Justice Connors asked me, came in through the grand jury statements of Mr. Jenkins. So the fact that he's arguing the oral and handwritten statements were improperly admitted, the same testimony came in through the grand jury testimony. He says that portions of Tremaine Brown's testimony were improperly admitted because they raised evidence that he had a motive. That same evidence of a motive came in through Jenkins' grand jury testimony. He tells Jenkins that he shot into that car because I thought those were the guys who jumped me like a little while back. That's the exact same information that comes in through Tremaine Brown's testimony. So that is why we started our argument by telling this court that if you take out every piece of objected-to testimony in this case, you still have the same information coming in through other ways. You have the confession of defendant, which courts have reiterated again and again, is the most important piece of evidence that can be presented. You have eyewitness testimony identifying defendant as the shooter. So defendants simply cannot demonstrate prejudice in this case. Thank you. Thank you. So for those reasons and for those in the people's brief, we would ask this court to affirm the defendant's conviction. Thank you. Thank you. Thank you. In measuring prejudice, to address counsel's point, we don't simply just take out the evidence, but we look at how that evidence affected the jury. And in this case, the state's entire case consisted of the out-of-court statements of these three witnesses who recanted at trial. That's all the state really had tying Kendrick Butler to this crime. And the state's entire case at trial was about bolstering the credibility of those statements. And that's where the prejudice comes in. As Ms. Kelly pointed out, the grand jury testimony of these three recalcitrant witnesses was properly admissible. Do you agree with that? Yes. And their testimony essentially said, this is the guy who did it. Why is that not something that the trier of fact could hang their hats on in convicting this defendant? The trier of fact can hang their hats on. And they did. But, I mean, tell me what's improper about it. What would be improper is taking those grand jury statements and then bolstering them and showing, look, they're credible. As counsel said, we need to show that on every prior occasion they said the same thing. And that's exactly why we don't allow prior consistent statements. Counsel got to the point of the ruling. Your opponents, I'm asking you, well, what's the magic number? If you have, as Justice Harris asked you earlier, if you have a parade of witnesses that just recant and say, no, we didn't say that, we have no idea what they're talking about. How does the state ever get to put on a case? The state, we're not at all tying the hands of the prosecutors here. 115-10.1 gives them the opportunity to put that in front of the jury and get it in as substantive evidence and base a conviction based solely on that. So we're certainly not tying the hands of the prosecutors here. What we are saying is that you shouldn't be able to exploit that rule by getting in every single prior statement ever made. So what's the magic number? If you have three witnesses who are saying, on these prior occasions I never did that, you're saying that the prosecutor is not allowed to show that they made a prior inconsistent statement on that very issue at another time and there's some magic number beyond which the judge shouldn't allow that in? Certainly they're allowed one. Beyond that, we're getting into prior consistent statement territory. So you're saying the magic number is one. She says there's no magic number.  Counsel's own argument seems to suggest the point that I'm trying to make is that they're trying to exploit this rule by saying, look, on every prior occasion they said this. You know, he talked to the detective. He talked to the state's attorney. He talked to the grand jury. Look at how credible our witness is. He said it on all these prior occasions. That's exactly why we don't allow prior consistent statements. And these are all coming in as substantive evidence. And so this has the improper bolstering effect. So you're saying they should have just allowed, the judge should have just allowed in the grand jury testimony but not the other two statements with respect to Jenkins, for example? Correct, because those other two statements were inadmissible because of personal knowledge and no affirmative damage. But then, yeah, the state could have gotten in the grand jury testimony, and that would have served the purpose of 115-10.1, of allowing the state to present their case with turned co-witnesses. That's exactly what 115-10.1 is for, and that would serve their purpose. And, again, the state's entire case was about bolstering these statements. And within these statements, there's evidence, hearsay evidence of motives. You have Kendrick Butler's confession coming in through Sean Jenkins, who wasn't even at this event. And as we know, confessions are powerful evidence on the jury. And so when you have this confession, again, being bolstered over and over again, the effect on the jury is simply incalculable. And so for those reasons, we would argue that the litany of errors in this case prevented Kendrick Butler from getting a fair trial. And we would ask that you would remand for a fair trial based only on proper evidence. Thank you. Thank you. This matter will be taken under advisement.